UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-21362-BLOOM/Elfenbein

**NERY VILLAR**,

    Plaintiff,

v.

**SCOTTSDALE INSURANCE COMPANY**,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Plaintiff Nery Villar's ("Plaintiff") Motion for Attorney's Fees and Costs (the "Motion") pursuant to Federal Rule of Civil Procedure 54(d)(2)(C), § 627.428(1), Florida Statutes, § 57.041, Florida Statutes, and Florida Rule of Civil Procedure 1.525 and in accordance with Local Rule 7.3(a), ECF No. [34]. Defendant Scottsdale Insurance Company ("Defendant") filed a Response in Opposition to the Motion (the "Response"), ECF No. [36], to which Plaintiff filed a Reply (the "Reply"), ECF No. [39]. The Honorable Beth Bloom referred the Motion to me "for a Report and Recommendation[]." ECF No. [43] at 1. Having reviewed the Motion, Response, and Reply, as well as the record and relevant law, I recommend that the Motion be **DENIED**.

**I.**      **BACKGROUND**

This case finds its origins in an insurance contract between the Parties to insure Plaintiff's Miami home. *See generally* ECF No. [1-2]. Pursuant to that contract, Defendant issued Plaintiff an all-risk insurance policy with a term starting May 20, 2020, and expiring May 20, 2021. *See id.* at ¶ 6; ECF No. [34] at ¶ 2 (citations omitted). On November 8, 2020, Tropical Storm Eta

damaged Plaintiff's home, causing Plaintiff to report the loss to Defendant. *See* ECF No. [1-2] at ¶ 8; ECF No. [34] at ¶ 3; ECF No. [36] at ¶ 1. Defendant assigned an independent adjuster to inspect the loss and investigate Plaintiff's claim. *See* ECF No. [36] at ¶ 3. Separately, Plaintiff hired a public adjuster — associated with Florida Public Adjusting — to conduct an independent inspection and investigation of Plaintiff's claim. *See id.* at ¶ 5. On April 1, 2021, Plaintiff's adjuster was the first of the two adjusters to provide an estimate of damages; Plaintiff's adjuster estimated that her property damage amounted to $154,872.30. *See id.* Later, Defendant's independent adjuster arrived at a much lower estimate, which, in turn, led to Defendant issuing Plaintiff a $5,920.14 payment on June 21, 2021. *See* ECF No. [34] at ¶ 3; ECF No. [36] at ¶ 4.

Despite Defendant's $5,920.14 payment to Plaintiff, Defendant continued to engage in the adjustment of Plaintiff's claim through its desk adjuster, who, on August 31, 2021, offered Plaintiff $46,250.58 in new money to settle her claim. *See* ECF No. [36] at ¶ 6. Plaintiff did not respond; Defendant sent follow-up emails regarding its settlement offer on September 23, 2021, October 14, 2021, and February 11, 2022. *See id.* at ¶¶ 6-7. On February 22, 2022 — almost six months after Defendant offered the additional funds to settle the claim, Plaintiff finally responded to Defendant's communications, stating that she was "unable to accept [Defendant's settlement] offer" because she had "already filed suit on th[e] claim." *See id.* at ¶ 7.

As it turned out, Plaintiff filed suit on October 8, 2021 — about six weeks after Defendant offered additional funds to settle the claim, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See* ECF No. [1] at 1. A review of the docket in this case reveals that Plaintiff failed to effectuate service on Defendant within 120 days of filing her lawsuit in accordance with Florida Rule of Civil Procedure 1.070. *See generally* ECF No. [6]; ECF No. [19]. This failure partially formed the basis of Defendant's Motion to Dismiss Plaintiff's Complaint and explains

why Defendant continued communicating its settlement offer with Plaintiff despite her decision to file suit. *See* ECF No. [6] at 5-6. Judge Bloom agreed with Defendant that Plaintiff failed to timely serve under the Florida Rules of Civil Procedure but declined to dismiss Plaintiff's Complaint on that ground, finding that "Rule 1.070(j)" was not designed "to give defendants a 'free' dismissal with prejudice." ECF No. [19] at 3 (quoting *Miranda v. Young*, 19 So. 3d 1100, 1103 (Fla. 2d DCA 2009)).

After Judge Bloom ruled on Defendant's Motion to Dismiss, Defendant filed a Motion to Compel Appraisal. *See generally* ECF No. [23]. In that filing, Defendant pointed out that Plaintiff's policy required "that amount of loss disputes be resolved by appraisal if demanded by either party." *Id.* at ¶ 2. Judge Bloom, acknowledging that it was unopposed, granted Defendant's Motion to Compel and stayed the instant case to allow the Parties to "proceed with the appraisal process" outlined in Plaintiff's policy. ECF No. [28] at 1; *see* ECF No. [23-1] at 32. Pursuant to that appraisal process, on August 28, 2023, the Parties' respective appraisers "executed an appraisal award form which allocated a supplemental payment to [Plaintiff], less prior payments and applicable deductibles." ECF No. [33] at ¶ 2 (citation omitted). In compliance with the deadline set forth in Plaintiff's policy, Defendant sent Plaintiff a check for the appraisal award on October 24, 2023 for $57,546.46. *See id.* at ¶ 4; ECF No. [34-2] at 1.

Following the completion of the appraisal process, Plaintiff filed the instant Motion in which she claims an entitlement to attorney's fees under § 627.428, Florida Statutes. *See* ECF No. [34] at ¶ 6. Plaintiff, quoting from Florida case law, asserts that § 627.428 "clearly provides that attorney's fees shall be decreed against the insurer when judgment is rendered in favor of the insured or when the insured prevails on appeal." *Id.* at ¶ 6 (emphasis omitted; quoting *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 832 (Fla. 1993)). Plaintiff claims that Defendant's

3

$57,546.46 payment was "the functional equivalent of a confession of judgment or verdict in favor of [Plaintiff], and thus, provides a basis for an award of attorney fees . . . ." ECF No. [34] at ¶¶ 8-9 (quoting *United States Fid. & Guar. Co. v. Murray*, 671 So. 2d 812, 813 (Fla. 4th DCA 1996); other citation omitted).

Defendant opposes the Motion on two grounds. First — and most importantly, Defendant argues that "Plaintiff is not entitled to fees or costs associated with the entry of the appraisal award" because "there was no breakdown in the adjustment of the claim and she rushed to the court[]house." ECF No. [36] at 3 (citations omitted). Defendant substantiates its argument by citing (1) *J.P.F.D. Investment Corp. v. United Specialty Ins. Co.*, 322 F. Supp. 3d 1263 (M.D. Fla. 2018), (2) *Rutherford v. Scottsdale Ins. Co.*, No. 19-CV-372, 2021 WL 12133906 (N.D. Fla. June 15, 2021), and (3) *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1219 (Fla. 2016) — cases which Defendant holds out as being factually analogous to the instant matter. *See* ECF No. [36] at 3-4. Alternatively, Defendant argues that the Court should deny the Motion because Plaintiff failed to provide Defendant with pre-suit notice of her intent to initiate litigation as required by § 627.70152, Florida Statutes. *See id.* at 4-7.

Plaintiff filed a Reply arguing that Defendant's "rush to the courthouse defense" is inapplicable here. Specifically, Plaintiff claims that (1) the significant disparity between the Parties' initial estimates of the covered damages created a bona fide dispute that amounted to a breakdown of the claims-adjusting process; and (2) §§ 627.70131 and 626.9541, Florida Statutes (2021),[1] required Defendant to pay the full amount of Plaintiff's insurance claim within 90 days of receiving notice and Defendant's failure to pay the claim in an agreed-upon amount provided

---

[1] Plaintiff also references F.A.C. 69B-220.201 in the Reply. *See* ECF No., 38 at ¶¶ 12-13. That provision of the Florida Administrative Code makes no reference to a 90-day deadline but rather speaks to ethical standards to which insurance adjusters are held. *See generally* F.A.C. 69B-220.201.

4

Plaintiff with a legitimate ground to file suit. *See* ECF No. [39] at ¶¶ 5-7, 12-13. Additionally, Plaintiff argues that the cases Defendant relies upon to support its "rush to the courthouse defense" are factually distinguishable from the instant case and, thus, provide no support. *See id.* at ¶¶ 18-30. The Reply addresses the Response's claim that § 627.70152 required Plaintiff to provide Defendant with pre-suit notice of intent to initiate litigation by incorporating by reference its Response to Defendant's Motion for Reconsideration.

## II.  DISCUSSION

Plaintiff moves for attorney's fees pursuant to § 627.428(1) and costs pursuant to § 57.041. Having reviewed the Parties' filings, I find that Plaintiff failed to state an entitlement to either attorney's fees or costs under the relevant statutes. I explain my reasoning below.

"Generally, the custom in American law is that each party is responsible for his or her own attorney's fees, regardless of the outcome of the action. An exception, however, arises when an agreement of the parties or a statute states otherwise." *Johnson*, 200 So. 3d at 1214-15 (citing *State Farm Fire & Cas. Co. v. Palma*, 629 So.2d 830, 832 (Fla. 1993)). Section 627.428 is one such statute and is implicated here.[2] Section 627.428 states in pertinent part that

> upon the rendition of a judgment . . . by any of the courts of this state against an insurer . . . under a policy or contract executed by the insurer, the trial court . . . shall adjudge . . . against the insurer. . . a reasonable sum as fees or compensation for the insured's . . . attorney prosecuting the suit in which the recovery is had.

*Id.* at (1). "The purpose behind section 627.428, Florida Statutes, 'is to discourage insurers from contesting valid claims and to reimburse successful policy holders *forced* to sue to enforce their policies.'" *Basik Exports & Imports, Inc. v. Preferred Nat. Ins. Co.*, 911 So. 2d 291, 294 (Fla. 4th

---

[2] Because this case is before the Court pursuant to diversity jurisdiction, the Court applies the law of the forum state, Florida. *See generally* ECF No. [1]; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

5

DCA 2005) (emphasis in original; quoting *Danis Indus. Corp. v. Ground Improvement Techniques, Inc.*, 645 So. 2d 420, 421 (Fla. 1994); other citation omitted).

Still, even if an insurer settles an insurance claim that it previously denied, the insurer may be liable for the attorney's fees an insured accumulated while prosecuting a legitimately filed lawsuit. *See Tampa Chiropractic Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 141 So. 3d 1256, 1258 (Fla. 5th DCA 2014) (holding that the Supreme Court of Florida "extended the [] application [of § 627.428] to cases in which the insurer settles or pays a disputed claim before rendition of judgment" (quotation omitted)). "In *Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So. 2d 217 (Fla. 1983), the Florida Supreme Court deemed an insurer's pre-trial settlement with the insured to be a 'confession of judgment' for purposes of section 627.428[.]" *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So. 2d 393, 397 (Fla. 5th DCA 2007). The Supreme Court of Florida explained its reasoning, stating:

> When the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is, indeed, the functional equivalent of a confession of judgment or a verdict in favor of the insured. Requiring the plaintiff to continue litigation in spite of an acceptable offer of settlement merely to avoid having to offset attorney's fees against compensation for the loss puts an unnecessary burden on the judicial system, fails to protect any interest — the insured's, the insurer's or the public's — and discourages any attempt at settlement.

*Wollard*, 439 So. 2d at 218 (Fla. 1983). In other words, "this doctrine applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in the insurer's change of heart and payment before judgment." *Lorenzo*, 969 So. 2d at 397 (citations omitted). However, courts should not apply the confession of judgment doctrine "'where the insureds were not forced to sue to receive benefits,' as applying the doctrine in such a circumstance 'would encourage unnecessary litigation by rewarding a race to the courthouse for attorney's fees *even where the insurer was complying with its obligations under the policy*.'" *People's Tr. Ins.*

*Co. v. Farinato*, 315 So. 3d 724, 728 (Fla. 4th DCA 2021) (emphasis added; citing *Lorenzo*, 969 So. 2d at 398).

As discussed in the Background section of this Report, Defendant relies on three cases to support its position that Plaintiff is not entitled to attorney's fees under § 627.428. The first is *J.P.F.D. Investment Corp.*; there, an insured filed a claim with its insurer to cover loss resulting from the water damage to its property. *See* 322 F. Supp. 3d at 1265. The insurer conceded that the policy covered the insured's claim for water damage, but the parties disagreed over the value of the covered damages. *See id.* Due to months of continued disagreement, the insurer formally invoked its right to an appraisal on June 26, 2017. *See id.* at 1265-66. However, unbeknownst to the insurer, the insured filed a lawsuit in state court on June 23, 2017, and it was not until July 3, 2017 that the insured served the state-court complaint. *See id.* at 1266. Approximately one month later, on August 1, 2017, the insurer removed the insured's state-court complaint to federal court, and, after removal, the insured moved to "obtain an appraisal[,]" the outcome of which resulted in appraisal award to Plaintiff. *Id.*

On this procedural and factual record, the court denied the insured's request for attorney's fees. *See id.* at 1267. The court explained that the insured failed to follow the policy terms before filing suit, which made payment of a claim partially contingent upon the invocation of appraisal. *See id.* Additionally, the court noted that before initiating the state-court action, the insurer paid part of the claim and was working to resolve the rest of the claim. *See id.*

The next case Defendant references is *Rutherford v. Scottsdale Ins. Co.* There, the insureds filed an insurance claim after a hurricane damaged their home, and the insurer made an initial payment on the claim. *See* 2021 WL 12133906, at *1. Thereafter, the insurer said it would consider any additional information the insureds submitted relating to the property damage. *See*

*id.* Approximately five months after the insurer made the initial payment, the insureds hired a public adjuster who reported that their property experienced $416,676.41 of property damage. *See id.* at 2. A month later, the insurer sent a letter to the insureds informing them that it had retained its own adjuster to reinspect the property. *See id.* While the parties negotiated the claim, the insureds filed suit. *See id.* Ultimately, the court concluded that an award of attorney's fees was not indicated in this case because "by filing suit when they did, [the insureds] effectively short-circuited [the insurer's] efforts to . . . properly adjust the claim and comply (or not) with its obligations under the policy." *Id.* at *3.

Finally, Defendant cites *Johnson v. Omega Ins. Co.* There, an insured brought a claim for property damage that a sinkhole caused. *See Johnson*, 200 So. 3d at 1210. After the insured filed his claim, the insurer retained a consultant to investigate the property damage, and the consultant's report "attributed the damage [to the insured's property] to causes that were not covered under the policy[.]" *Id.* Based on the investigator's report, the insurer "*totally denied* [the insured's] claim[.]" *Id.* (emphasis added). The insured then filed suit, which ultimately led the insurer to pay the insured's claim.

On these facts, the Supreme Court of Florida held that the insured was entitled to an award of attorney's fees. The Court explained that "[o]nce an insurer has incorrectly denied benefits and the policyholder files an action in dispute of that denial, the insurer cannot then abandon its position without repercussion." *Id.* at 1218. Applying this holding to the facts before it, the Court found that the insurer incorrectly denied the insured's claim for benefits and, as a result, the insured was entitled to attorney's fees. *See id.* at 1219.

While each of these cases contains distinguishable facts and differing outcomes, they all stand to support the same principle: for an insured to be entitled to attorney's fees under § 627.428,

8

the insured's lawsuit must have been a necessary catalyst to recover the benefits owed under the insurance policy. *See People's Tr. Ins. Co. v. Polanco*, 354 So. 3d 557, 559 (Fla. 4th DCA 2023) ("An insured moving for attorney's fees must prove that the suit was filed for a legitimate purpose, and whether the filing acted as a necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract." (quotation omitted)); *see also Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP*, 900 So. 2d 676, 679 (Fla. 4th DCA 2005) (affirming award of attorney's fees when the insured, repeatedly and to no avail, "attempted to resolve any differences without resorting to formal legal action").

Here, the Plaintiff's lawsuit was not a necessary catalyst for the appraisal award it ultimately received as there was no breakdown in the claim-adjusting process. Undoubtedly, the Parties began with significantly different valuations of the damage to Plaintiff's property. *See* ECF No. [34] at ¶ 3; ECF No. [36] at ¶¶ 4-5. Approximately two months after receiving the estimate of damages from Plaintiff's public adjuster, Defendant adjusted the claim and made a payment in the amount of $5,920.14, and two months after that, Defendant readjusted the claim, offering Plaintiff additional money, $46,250.58, to resolve the insurance claim. *See* ECF No. [36-1] at ¶¶ 5-7. Rather than engage with Defendant, Plaintiff filed suit six weeks later. As evidenced by the record in this case, the decision to file suit was ultimately of no consequence as the Court simply granted Defendant's Motion to Compel Appraisal, *see generally* ECF No. [28] — which, importantly, Defendant filed pursuant to the terms of Plaintiff's insurance policy. Thus, when Plaintiff received her appraisal award, she received it pursuant to the process set forth in her policy and not pursuant to an order of the Court. *767 Bldg., LLC v. Allstate Ins. Co.*, No. 10-CV-60007, 2010 WL 1796564, at *2 (S.D. Fla. 2010) ("If an insurer admits that there is a covered loss, the amount of which is disputed, the amount of loss question is for an appraisal panel. If an insurer

denies that there is a covered loss, the issue of coverage is one for the trial court." (quoting *Sunshine State Ins. Co. v. Rawlins*, 34 So. 3d 753, 2010 WL 1576791, at *1 (Fla. 3d DCA 2010)); *see also Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002) ("[C]ausation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed."). Thus, there is no indication that there was a breakdown in the claims-adjusting process, which was, in turn, a catalyst for the filing of the lawsuit.

Addressing Plaintiff's statutory argument in her Reply, I find that it is similarly unpersuasive. To recap, Plaintiff argues that §§ 627.70131 and 626.9541 required Defendant to pay the complete amount of Plaintiff's insurance claim within 90 days of notice of the claim and that Defendant's failure to pay the claim in an agreed-upon amount provided Plaintiff with a legitimate ground to file suit. *See* ECF No. [39] at ¶¶ 12-13. However, neither statute provides Plaintiff with the support she seeks.

First, § 627.70131(7)(a) creates an entitlement to interest for insurance claimants who had to wait over 90 days to receive payment on their insurance claim.[3] This provision of § 627.70131 does not apply here as Defendant paid the undisputed portion of the claim within 90 days of

---

[3] Section 627.70131 states in pertinent part that:

> Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment. Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest.

*Id.* at (7)(a).

receiving notice of the claim.[4]  *See* ECF No. [39] at ¶ 6.  Next, § 626.9541(i)(4) states that an insurer's failure to pay any undisputed portion of an insurance claim within 90 days amounts to an unfair settlement practice.[5]  *See id.*  This statutory provision also does not apply because — again — Defendant paid the undisputed claim in the amount it valued Plaintiff's loss within 90 days of receiving notice.  *See* ECF No. [39] at ¶ 6.

To the extent Plaintiff attempts to argue that these statutory provisions required Defendant to finish adjusting Plaintiff's insurance claim within 90 days of Plaintiff submitting her notice of loss, § 627.70131(7)(a) and case law refute that argument.  The language of § 627.70131(7)(a) implicitly acknowledges that insurance claims may be "reopened[.]"  *Id.*  Here, Defendant presumably made the $5,920.14 payment on Plaintiff's property claim to avoid the interest levied by the statute on late payments, but that payment did not foreclose the possibility that Defendant could reopen and readjust the claim and continue negotiations.

---

[4] Plaintiff reported her loss on March 26, 2021 and received the $5,920.14 payment on June 22, 2021, which was within the 90-day window.  *See* ECF No. [39] at ¶ 6; *see also* Fed. R. Civ. P 6(a)(1) ("When the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

[5] Section 626.9541 states:

> Unfair claim settlement practices.— . . .
>
> Failing to pay *undisputed* amounts of partial or full benefits owed under first-party property insurance policies within 90 days after an insurer receives notice of a residential property insurance claim, determines the amounts of partial or full benefits, and agrees to coverage, unless payment of the undisputed benefits is prevented by an act of God, prevented by the impossibility of performance, or due to actions by the insured or claimant that constitute fraud, lack of cooperation, or intentional misrepresentation regarding the claim for which benefits are owed.

*Id.* at (i)(4) (emphasis added).

Indeed, it appears to be industry practice for insurers to pay the undisputed portion of the claim while parties engage in the claim-adjustment process. For instance, in *J.P.F.D. Investment Corp.*, an insured experienced property damage on January 20, 2017. 322 F. Supp. 3d at 1265-66. Within 90 days of receiving notice of the loss— on April 6, 2017, the insurer paid $152,262.52 on the claim and "[l]ess than a month later," the insurer agreed to pay the insured another $91,080.97 — which of course came more than ninety days after the insured initially reported the loss. *Id.* The last payment the insurer made on the claim came shortly after January 5, 2018 — almost a year after the insured filed the notice of loss — and in the amount of $249,228.96 pursuant to an appraisal award. *Id.* Even though the entire claim had not been paid and resolved within 90 days of the insured reporting its loss, the Court in *J.P.F.D. Investment Corp.* found that the insured rushed to the courthouse when it filed suit before the appraisal process ended — which the insurer invoked pursuant to the insured's policy — and before the insurer formally denied the insured coverage. *See id.* at 1272. Consistent with the factual and legal findings in *J.P.F.D. Investment Corp.*, Plaintiff's argument that she had a legitimate ground to file suit because §§ 627.70131 and 626.9541 required Defendant to pay the total amount of Plaintiff's insurance claim within 90 days of notice and that Defendant's failure to pay the claim in an agreed-upon amount within this timeframe lacks merit. Thus, Plaintiff's statutory arguments do not provide grounds on which to grant the Motion.

In sum, the factual record, when laid bare, clearly shows that Plaintiff "rushed to the courthouse" when she filed this case in the midst of the Defendant's attempt to adjust and resolve the insurance claim and is, therefore, not entitled to attorney's fees under § 627.428(1). And because Plaintiff is not entitled to attorney's fees, I also find that she is not entitled to costs under § 57.041. *See Hendry Tractor Co. v. Fernandez*, 432 So. 2d 1315, 1316 (Fla. 1983) ("[W]e find

that a plaintiff in a multicount personal injury action who recovers money judgment on at least one but not all counts in the cause of action, is the "party recovering judgment" for purposes of section 57.041(1), Florida Statutes (1979), and therefore is entitled to recover costs."); *see also Bessey v. Difilippo*, 951 So. 2d 992, 997 (Fla. 1st DCA 2007) ("When judgment was entered against the [defendants, [the plaintiff] became the 'party recovering judgment,'" within the meaning of section 57.041(1), Florida Statutes (2005), and was thus entitled to an award of all taxable costs reasonably and necessarily incurred in maintaining suit." (footnote call number omitted)).

As to the second argument Defendant raises in the Response, asking the Court to deny the Motion because Plaintiff failed to provide pre-suit notice of her intent to initiate litigation as required by § 627.70152, *see* ECF No. [36] at 4-7, this argument forms the basis of the Motion for Reconsideration currently pending before Judge Bloom. *See generally* ECF No. [35]. For that reason, I decline to address this argument and defer to Judge Bloom, who will address it in due course.

### III.  CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Plaintiff Nery Villar's Motion for Attorney's Fees, **ECF No. [34]**, be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the

interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 2, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record